UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| MICHAEL JOHNSON, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 2017 CV 50248 |
| | ) |
| DERION A. HALFACRE, | ) |
| GANGES BELL, | ) |
| KIM ENGELS, | ) |
| NICK JONES, | ) |
| BRETT BITLER, | ) |
| JOSEPH GARCIA, | ) |
| TRAVIS ZACCARD, | ) |
| KEVIN STANKO, and | ) |
| FRANK WOOLEY | ) |
| | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

Plaintiff, MICHAEL JOHNSON, JR., by and through his appointed counsel, Marc C. Gravino of WILLIAMS McCARTHY, LLP, states and alleges as follows in support of his First Amended Complaint.

1. This is an action for money damages brought pursuant to 42 U.S.C. § 1983.

2. Jurisdiction for Plaintiff's claims is based on 28 U.S.C § 1331 and 1343(a).

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that the claims arose in this district as alleged below.

## PARTIES

4. Plaintiff is currently incarcerated in the Dixon Correctional Center in Dixon, Illinois.

1

5. Officer Derion A. Halfacre is a correctional officer working at the Dixon Correctional Center in Dixon, Illinois.

6. Officer Ganges Bell is a correctional officer working at the Dixon Correctional Center in Dixon, Illinois.

7. Officer Nick Jones is a correctional officer working at the Dixon Correctional Center in Dixon, Illinois.

8. Officer Brett Bittler is a correctional officer working at the Dixon Correctional Center in Dixon, Illinois.

9. Officer Joseph Garcia is a correctional officer working at the Dixon Correctional Center in Dixon, Illinois.

10. Officer Travis Zaccard is a correctional officer working at the Dixon Correctional Center in Dixon, Illinois.

11. Mental Health Professional Kevin Stanko is a mental health professional working at the Dixon Correctional Center in Dixon, Illinois.

12. Mental Health Professional Frank Wooley is a mental health professional working at the Dixon Correctional Center in Dixon, Illinois.

13. Kim Engels is a nurse / provider of medical services working at the Dixon Correctional Center in Dixon, Illinois.

14. Defendant officers are duly appointed and sworn correctional officers of the Dixon Correctional Center. At all times relevant to this First Amended Complaint, the defendants were acting in the course of and scope of their employment, and under color of state law, ordinance and/or regulation.

15. Defendants are sued in their official and individual capacities. The Defendants at all times relevant are responsible for the well-being of the inmates at the Dixon Correctional Center, including providing adequate care and security the for inmates' health, safety and welfare.

## FACTS

16. On or about June 13, 2017, while in route to the law library at Dixon Correctional Center, Plaintiff was stopped by Officer Halfacre who informed him that he was not allowed to go to the law library because he had a medical lay-in for his cell.

17. Officer Halfacre stated to Plaintiff at that time that Lt. Bell had determined that Plaintiff could not go to the law library.

18. Plaintiff showed Officer Halfacre his medical lay-in memorandum at that time and pointed out that it did not prohibit him from going to the law library.

19. Officer Halfacre again stated that Plaintiff could not go to the law library.

20. At this time, Plaintiff asked to speak with Lt. Bell, but Officer Halfacre refused to allow him to do so.

21. Plaintiff suffered from mental and other illness and was a resident of the mental health wing at the Dixon Correctional Center at all times relevant to this First Amended Complaint, and Defendants were aware of this. Plaintiff also suffers from a pre-existing eye condition.

22. Plaintiff requested a crisis team at this time and told Officer Halfacre that he was going to hang himself.

23. Officer Halfacre refused Plaintiff's request for a crisis team at that time.

24. A short time later, Plaintiff obtained a sheet from the laundry cart on the gallery, went to the top gallery, climbed over the railing, and tied one end of the sheet around his neck and the other end around the railing.

25. Various officers, including Bell, were called and promptly joined Halfacre in the area where plaintiff was standing.

26. Lt. Bell asked the Plaintiff what the problem was while shaking his canister of oleoresin capsicum ("OC spray").

27. At this time, Plaintiff was not threatening to harm anyone, and was talking in a calm manner with Lt. Bell.

28. At this time, Plaintiff was not disregarding any orders.

29. At this time, Plaintiff told Lt. Bell and Halfacre that he was being improperly denied access to the law library, he complained about the conditions of his confinement, and he indicated that he wanted to see the superintendent and a crisis team.

30. At this time, Lt. Bell lunged forward and sprayed OC spray directly into Plaintiff's eyes.

31. At this time, Plaintiff jumped back over the railing and untied the sheet around his neck.

32. Plaintiff was then handcuffed and restrained by several officers at this time, who took him to the lower gallery, where he was allowed only a few seconds to splash water in his eyes. Defendant Bell refused plaintiff's request to shower and clean the O.C. spray from his body and eyes.

33. Plaintiff was then placed in a cell without being allowed to shower or otherwise adequately flush his eyes or body with water to alleviate the burning from the O.C. spray.

34. After approximately one hour, defendant, nurse Kim Engels came to Plaintiff's cell, and briefly examined him. During this exam, plaintiff told her that his eyes were burning and requested a shower and a solution to wash out his eyes and rinse off his body.

35. Nurse Kim Engels advised Plaintiff that he would only get the water in his sink and nothing further for his eyes. Plaintiff subsequently asked Defendants Jones, Bitler, Garcia, and Zaccard for a shower so he could wash out his eyes, but they refused Plaintiff's repeated requests.

36. Plaintiff was not allowed to shower for approximately 3 days until on or about June 17, 2017 and was forced to endure burning pain and suffering from the OC spray until that time.

37. Plaintiff suffered for approximately 72 hours without being able to adequately rinse his eyes and body, from the time of the OC spray on or about June 13, 2017.

38. Plaintiff requested to be examined by an eye doctor on June 13, 2017, but his request was not approved until 3 days after incident on June 16, 2017.

39. Plaintiff was not examined by an eye doctor until sometime approximately one week or more thereafter.

40. The day after the OC spray incident, on June 14, 2017, Plaintiff woke up with his back "locked up" and he was unable to move without excruciating pain.

41. Plaintiff had no clothes or a mattress in his cell and was given only a suicide blanket and a suicide smock.

42. Upon waking, Plaintiff hollered in pain for a nurse, but was not provided with pain pills for several hours.

43. In the meantime, Plaintiff was unable to stand or walk to use the toilet, and was forced to urinate on himself because of his excruciating pain; and he was forced to lay in his own urine for several hours.

44. Plaintiff requested a mattress from mental health professional Wooley and defendant Stanko on June 14, 2017 but was not given one until June 16, 2017. As a result of their denial of his request, plaintiff's suffering continued, and his back injury was exacerbated.

5

45. Correctional Officer Halfacre wrote a disciplinary report against Plaintiff in retaliation for Plaintiff's threat to sue over denial of access to the law library.

46. The adjustment committee found him guilty of a disciplinary offense, based on Officer Halfacre's false report that the Plaintiff had refused an order.

47. Plaintiff filed a written grievance regarding the above matters with a IDOC counselor and another with the warden and sent copies to the IDOC administrative review board in Springfield on June 17, 2017.

48. Plaintiff exhausted his administrative remedies regarding the grievances.

49. Each individual Defendant acted willfully and wantonly, maliciously, and with a conscious disregard and deliberate indifference to Plaintiff's rights.

50. As a direct and proximate result of the acts of the Defendants described above, Plaintiff suffered damages, including physical pain and suffering and emotional distress.

## COUNT I

### (RETALIATION CLAIM v. OFFICER HALFACARE)

51. Plaintiff restates and reallages his allegations in paragraphs 1 – 50 as though fully set forth herein.

52. A claim of retaliation requires allegations that:

    a) Plaintiff engaged in activity protected by the First Amendment;

    b) Plaintiff suffered a deprivation that would likely deter First Amendment activity in the future; and

    c) The First Amendment activity was at least a motivating factor in the decision to take the retaliatory action.

53. As alleged above, Plaintiff had a right to complain about the conditions of his confinement.

54. Officer Halfacre issued a disciplinary ticket to Plaintiff in retaliation for his complaint about the conditions of his confinement and his threat to file a lawsuit, and not because of any bona fide refusal to obey an order.

WHEREFORE, Plaintiff, MICHEAL JOHNSON, JR., asks this Honorable Court:

    a)     To enter a judgment against Defendant Halfacre;

    b)     Award Plaintiff compensatory damages;

    c)     Order attorney's fees and costs; and

    d)     Award any other further relief this Honorable Court deems just and equitable.

## COUNT II

**(Deliberate indifference to serious medical need- Halfacre and Bell)**

55. Plaintiff restates and reallages his allegations in paragraphs 1 – 54 as though fully set forth herein.

56. As alleged above, Officer Halfacre and Lt. Bell's actions and response to Plaintiff's request for a crisis team member was carried out knowing of Plaintiff's mental illness and the fact that he was suicidal. These actions demonstrate defendants' deliberate indifference to his serious medical needs.

WHEREFORE, Plaintiff, MICHEAL JOHNSON, JR., asks this Honorable Court:

    a)     To enter a judgment against Defendant Halfacre and Bell;

    b)     Award Plaintiff compensatory damages;

    c)     Order attorney's fees and costs; and

    d)     Award any other further relief this Honorable Court deems just and equitable.

## COUNT III

### (Excessive Force- Lt. Bell)

57. Plaintiff restates and reallages his allegations in paragraphs 1 – 56 as though fully set forth herein.

58. While the use of pepper spray / OC spray is not a *per se* violation of the Eighth Amendment, the appropriateness of the use must be determined by the facts and circumstances of the case.

59. As demonstrated by the above facts, Lt. Bell's use of the pepper spray was not reasonably necessary to subdue Plaintiff.

60. As alleged above, the Defendant refused to allow the Plaintiff to adequately wash off the OC spray from his eyes and body for an extended period of time, causing burning to his eyes and pain and suffering, necessitating a follow up examination by an eye doctor.

WHEREFORE, Plaintiff, MICHEAL JOHNSON, JR., asks this Honorable Court:

    a)    To enter a judgment against Defendant Bell;

    b)    Award Plaintiff compensatory damages;

    c)    Order attorney's fees and costs; and

    d)    Award any other further relief this Honorable Court deems just and equitable.

## COUNT IV

### (Deliberate indifference to serious medical need- Bell, Engles, Jones, Bitler, Garcia, Zaccard)

61. Plaintiff restates and reallages his allegations in paragraphs 1 – 60 as though fully set forth herein.

62. As alleged above, Defendants Bell, Engles, Jones, Bitler, Garcia, Zaccard refused to allow plaintiff to wash the O.C. spray from his eyes and body, causing pain and injury and evidencing their deliberate indifference toward the Plaintiff's suffering.

WHEREFORE, Plaintiff, MICHEAL JOHNSON, JR., asks this Honorable Court:

    a)     To enter a judgment against Defendants Bell, Engles, Jones, Bitler, Garcia, and Zaccard;

    b)     Award Plaintiff compensatory damages;

    c)     Order attorney's fees and costs; and

    d)     Award any other further relief this Honorable Court deems just and equitable.

## COUNT V

### (Deliberate indifference to serious medical need- Stanko and Wooley)

63. Plaintiff restates and reallages his allegations in paragraphs 1 – 62 as though fully set forth herein.

62. As alleged above, Defendants Stanko and Wooley refused to provide Plaintiff with a mattress although they had knowledge of his back problems, therefore evidencing their deliberate indifference toward the Plaintiff's suffering.

63. The above acts and omissions caused Plaintiff to suffer unnecessarily, and to urinate on himself because of his inability to walk to the toilet and to remain in his own urine for several hours.

WHEREFORE, Plaintiff, MICHEAL JOHNSON, JR., asks this Honorable Court:

    a)     To enter a judgment against Defendants Stanko and Wooley;

    b)     Award Plaintiff compensatory damages;

    c)    Order attorney's fees and costs; and

    d)    Award any other further relief this Honorable Court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY**

MICHAEL JOHNSON, JR., Plaintiff,

BY:   /s/ Marc C. Gravino

Marc C. Gravino
WilliamsMcCarthy, LLP
120 W. State Street, 4th Floor
P.O. Box 219
Rockford, IL 61105-0219
815-987-8921
mgravino@wilmac.com